118 P.3d 99

Claude E. SELLS, Jr. and Sally J. Sells, husband and wife, individually and as Trustees of the Claude E. Sells, Jr. Revocable Trust U.D.T. 9–23–92 and the Sally J. Sells Revocable Trust U.D.T. 9–23–92, Plaintiffs–Respondents,

v.

Gary ROBINSON, individually and in his capacity as Trustee, Defendant–Appellant.

No. 30700.

Supreme Court of Idaho,
Boise, April 2005 Term.

July 1, 2005.

Rehearing Denied Aug. 24, 2005.

Arthur M. Bistline, Coeur d'Alene, for appellant. Arthur M. Bistline argued.

Lamanna Law Office, Priest River, for respondents. Nicholas M. Lamanna argued.

SCHROEDER, Chief Justice.

Claude and Sally Sells (Sells) made claims against Gary Robinson (Robinson) for timber trespass, conversion and damages. Robinson asserted that he had a contractual right to the timber on the Sells' property. The district court ruled in favor of the Sells and awarded them treble damages for the timber trespass, other damages, costs and attorney fees. Robinson appealed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1993 the Sells purchased about fifty acres of property in Bonner County, Idaho, several miles north of Priest River. The Sells sold a portion of the property to Mr. Milliron (Milliron), their neighbor. In 1995, the Sells wished to sell an additional twenty acres of the property and listed the property with real estate broker Marte Cliff (Cliff). The Sells would retain their home and ten acres to the north of the parcel being sold. All of the property owned by the Sells at the time had growing merchantable timber. At the time the Sells listed their property they wished to include a timber clause which would provide that no logging could occur on the twenty acres until all payments for the

property had been made. The timber clause would provide the Sells with some security in the form of the value of the timber in the event the buyer defaulted.

Around August of 1996, Robinson was traveling through Idaho, Montana and Wyoming in search of property. Robinson met with Ron Hager, a real estate salesperson from Clark Fork, Idaho. Robinson testified that he, his father, Hager and Cliff met at the Sells' twenty-acre parcel. Robinson believed the Sells were asking too much for the property. Robinson wanted recreational rights for the creek running through the Sells' ten acres that were not for sale. In addition, Robinson wanted to widen the access road across the Sells' property to the twenty-acre parcel.

On August 26, 1996, the Sells and Robinson signed a Real Estate Purchase and Sale Agreement (REPSA). Section 5 of the REPSA set forth additional terms and/or conditions for the agreement, which were drafted by Robinson's real estate agent. These terms were: 1) Seller to supply $2,000.00 as a part of the down payment at closing. 2) Seller to grant an all inclusive easement on that portion of Sellers' remaining land located north and west of the northeast corner of parcel being sold. 3) *Timber rights on said easement are also included.* 4) Seller agrees to share water rights from creek with buyer as prescribed [sic] dictates according to Sellers' water rights. Buyer shall be responsible to file for (illegible) rights.

(Emphasis added).

Three days later, on August 29, 1996 the Sells executed a warranty deed to convey the twenty acres to Robinson. The legal description for the warranty deed described the easement Robinson was granted over the Sells' remaining ten acres as follows:

ALSO TOGETHER WITH an easement over and across a portion of the remaining lands of the grantors lying North of the above described tract and West of the Northerly extension of the East line of said tract for the purpose of ingress, egress access to the existing creek, recre-

ational and *for removal of the timber located thereon.*

(Emphasis added).

Robinson interpreted both the REPSA and the Warranty Deed as granting him timber rights on the Sells' ten acres. In the summer of 1997 Robinson hired a logger, Mark Day (Day), to log his twenty acres and the Sells' ten acres. Day logged the property in the winter and spring of 1998. He testified that approximately thirty percent of the total timber logged was from the Sells' property. The Sells were in Arizona at the time. When they returned, they were surprised to find their ten acres had been logged. The Sells believed that the Warranty Deed granted Robinson timber rights on only the easement over their property that had been granted to Robinson in order to access his twenty acres.

The Sells sued Robinson for timber trespass, conversion and damages to their property. They requested costs and attorney fees. Robinson responded that he had a contractual right to the timber on the Sells' property. The case was tried to the court without a jury.

Robinson presented two witnesses in support of his position that he had a right to log the Sells' property. One was Robinson's cousin and the other was Hager, Robinson's real estate agent. Hager testified that the Sells' intended to give Robinson logging rights. Hager also testified that he drafted the language in the REPSA relating to timber rights. However, the district judge noted that Hager did not recall many of the events surrounding the transaction and that his testimony conflicted with the testimony of other witnesses. The district judge pointed out that both Hager and Robinson testified on cross-examination that no discussion took place among the parties about the volume of timber on the Sells' property, how much timber was to be removed, or the value of the timber.

The Sells testified that they gave Robinson the right to remove trees only from the access road for the purposes of widening that road. That is, if Robinson needed to remove trees from the road in order to widen or otherwise improve it, he was entitled to the market value of the timber removed. The Sells testified that they granted Robinson a

recreational easement over their property and water rights from the creek through their parcel to Robinson's property, but that was all. They testified that they had previously declined the sale of the timber rights to their property to others. The district judge noted the timber clause in the listing agreement and that the Sells believed Robinson when he said he wanted to keep the trees on the property.

Cliff testified on behalf of the Sells that the purchase price Robinson paid for the property was reasonable. The price would have been unreasonably low if it had included the timber rights to the Sells' property. The district judge noted that by the time of trial, all of the witnesses had trouble recalling the transaction and the Sells' witnesses' testimony was very different from Robinson's witnesses' testimony. The district judge concluded that the language in the deed relating to timber was ambiguous. The district judge rejected Robinson's interpretation of the agreement finding that Robinson's "version does not have the ring of truth." The district court determined that the parties did not intend for Robinson to have timber rights to the Sells' property.

The district court determined that the total value of merchantable timber removed from both Robinson's and the Sells' property was $34,595.50 and that at least thirty percent of the timber came from the Sells' property. The district court held that the value of the timber taken from the Sells' property was $10,378.65. Further, the Sells' property value was decreased by $10,000.00, or $1,000.00 per acre, due to Robinson's logging activities.

The district court applied the doctrine of merger, finding that the REPSA was merged into the deed and, therefore, only the terms of the deed would be considered. The district court held that Robinson had no right to the timber on the Sells' property and held Robinson liable for timber trespass under I.C. § 6–602, as well as damages to the Sells' property. The district court awarded the Sells costs and attorney fees. Robinson appealed.

## II.

## STANDARD OF REVIEW

 Application of the doctrine of merger in a particular case appears to be a mixed question of law and fact. *Sainsbury Constr. Co., Inc. v. Quinn*, 137 Idaho 269, 273, 47 P.3d 772, 776 (Ct.App.2002) (reviewing district court's application of the doctrine of merger to the facts of the case and finding that "[u]pon independent review of the record, there was substantial and competent evidence to support the district court's findings of fact and that the district court correctly applied the law based on those findings."). In reviewing mixed questions of law and fact, "this Court will differentiate among the fact-finding, law-stating, and law-applying functions of the trial courts." *Haight v. Dales Used Cars, Inc.*, 139 Idaho 853, 855, 87 P.3d 962, 964 (Ct.App.2003). Findings of fact made by the district court will be upheld where they are supported by substantial and competent evidence in the record. *Id.* This Court freely reviews a district court's application of law to its findings of facts. *Id.*

## III.

## THERE WAS NO ERROR IN APPLYING THE DOCTRINE OF MERGER TO THE REPSA AND THE DEED IN THIS CASE; HOWEVER, BOTH INSTRUMENTS ARE AMBIGUOUS.

Robinson argues that the doctrine of merger does not apply in this case for two reasons: 1) merger does not occur where the deed is ambiguous and 2) an exception to merger exists where an agreement is collateral to the deed. In *Jolley v. Idaho Sec., Inc.*, 90 Idaho 373, 414 P.2d 879 (1966), this Court defined the doctrine of merger as follows:

> [T]he acceptance of a deed to premises generally is considered as a merger of the agreements of an antecedent contract into the terms of the deed, and any claim for relief must be based on the covenants or agreements contained in the deed, not the covenants or agreements as contained in the prior agreement.

*Id.* at 382, 414 P.2d at 884.

The Court recognized that an exception to merger exists, "where under the contract the rights are conferred collaterally and independent of the deed; there being no presumption that the party in accepting the deed intends to give up the covenants of which the deed is not a performance or satisfaction." *Id.* However, the Court noted that, "[w]here the right claimed under the contract would vary, change, or alter the agreement in the deed itself, *or inheres in the very subject-matter with which the deed deals, a prior contract covering the same subject-matter cannot be shown as against the provisions of the deed.*" *Id.* (Emphasis added).

The REPSA language relating to timber, drafted by Robinson's real estate agent, purports to grant an "all inclusive" easement over the Sells' property and "timber rights on said easement are also included." The deed's language relating to timber grants:

[A]n easement over and across *a portion* of the remaining lands of the grantors lying North of the above described tract and West of the Northerly extension of the East line of said tract for the purpose of ingress, egress access to the existing creek, recreational and *for the removal of the timber located thereon* (emphasis added).

The district court held that the deed was ambiguous. Robinson asserts, but cites to no cases explicitly holding that the doctrine of merger cannot be applied where terms of a deed are ambiguous.

Both the REPSA and the deed discuss the timber on the Sells' property. Applying the rule of law from *Jolley*, the district court determined that the terms of the REPSA merged into the deed conveying the property to Robinson. The district court's determination is correct because the terms of the REPSA Robinson seeks to enforce "inhere in the very subject-matter with which the deed deals"—the timber on the Sells' remaining property. The timber language in the REPSA does not constitute a collateral agreement relating to timber rights, independent of the terms of the deed. Therefore, the terms of the REPSA merged into the deed, and only the deed's language should be considered by

this Court, though according to this Court's view, both are ambiguous.

## ·IV.

## THE DEED IS AMBIGUOUS

### A. Standard of Review.

The determination of whether a document is ambiguous is a question of law over which this Court exercises free review. *C & G, Inc. v. Rule,* 135 Idaho 763, 25 P.3d 76 (2001). The interpretation of an ambiguous document is a question of fact. *DeLancey v. DeLancey,* 110 Idaho 63, 65, 714 P.2d 32, 34 (1986). A lower court's findings of fact will be upheld by the reviewing court where there is substantial and competent evidence in the record supporting the findings. *Id.*

### B. The deed's language referring to timber is ambiguous and the district court properly interpreted the agreement as not granting Robinson the right to remove the timber from the Sells' property.

The district court stated that the phrase "for removal of the timber located thereon" could be reasonably construed as referring to the easement area (the roadway itself) where timber could be removed. This interpretation conflicts with another interpretation of the clause that the purpose of the easement is "for ingress or egress for 'removal of timber thereon,' with 'thereon' referring to the 'remaining lands of the grantors.'"

Robinson argues that the language cannot reasonably be interpreted as referring to the removal of timber on only the roadway because the roadway is not mentioned in the language creating the easement in that portion of the deed. However, even if the language cannot be construed as referring to removal of timber on a roadway, it is still ambiguous. A third interpretation of the language is reasonable, in that the phrase could be construed as referring to the removal of timber on the area for "ingress, egress access to the existing creek, recreational...." The first words creating the easement state that "also together with an easement over and across *a portion* of the

remaining lands of the grantors" (emphasis added). It is reasonable to interpret the "removal of the timber located thereon" as granting Robinson the right to remove timber on only a portion of the Sells' property. There are multiple interpretations of the language that can reasonably be argued. The deed's language is ambiguous.

■ In construing an ambiguous deed, the Court should give effect to the parties' intentions. *Daugharty v. Post Falls Highway Dist.* 134 Idaho 731, 735, 9 P.3d 534, 538 (2000). To give effect to the intent of the parties, "the contract or other writing must be viewed as a whole and in its entirety." *Id.* The Court must consider all of the surrounding facts and circumstances. *Bumgarner v. Bumgarner,* 124 Idaho 629, 637, 862 P.2d 321, 329 (Ct.App.1993). The trial court determines the credibility of witnesses.

■ The district court viewed the document as a whole and also weighed the conflicting testimony of the witnesses. Because the interpretation of an ambiguous deed is a question of fact, the district court's finding that the deed did not grant Robinson the right to remove the timber on the Sells' property need only be supported by substantial and competent evidence, and is not freely reviewable by this Court. The district court noted that "[w]ith diametrically opposed testimony, one must determine the intentions of the party as reflected by the factual setting presented and by judging the credibility of the witnesses." In determining that the deed did not grant Robinson the timber rights to the Sells' property, the district court stated:

> The defendant's view of the evidence is to be juxtaposed by the testimony of Mr. Milliron, an adjacent neighbor, who testified that he paid $1,500 per acre for real property that had no timber on it. From a review of Exhibit A, there is no doubt that the real property purchased by Mr. Robinson did include timber. According to the testimony of Marte Cliff, the purchase price of $2,500 per acre was a fair price. It is illogical, when considering all of the facts and circumstances, that the purchase price of $2,500 per acre would also include the timber rights to an additional ten acres

of property that were not being conveyed. This is particularly so when, in hindsight, we learn that two years after the purchase of the 20 acres of real property sold to Mr. Robinson as well as the Sells' 10 acres were logged and an additional $34,000 for the timber was obtained. It is difficult to believe that the sellers would allow for the sale of their timber rights on their remaining property where their home was located when they received only a minimal down payment on a transaction totaling less than $55,000. When consideration is given to the fact that the sellers at the time of listing the property did not wish to allow the taking of timber on the 20–acre parcel they sold to occur before the full purchase price was paid, the defendant's version does not have the ring of truth.

> Mr. Sells' reactions to Mr. Milliron, upon learning of the logging, and his reaction to Mr. Robinson, during his confrontation are further proof that there was no intention to convey timber rights. The fact that the logging occurred when the Sells were absent also infers that such actions would not be allowed by the Sells if they were staying at their residence. . . .

The district court relied upon this testimony in making its determination that Robinson did not have a right to the timber on the Sells' property. In addition, the district court in its Conclusions of Law noted that the easement language relating to timber did not contain a grant or conveyance of timber rights. The district court stated that:

> [The deed] only confers a right to use the easement for the purpose of removal of timber. There is no "grant" or conveyance of ownership of timber. There is no mention of the conveyance of the remaining timber on the Sells' property which is unrelated to ingress and egress. Indeed, none of the testimony indicates that the parties had any discussion or agreement about the volume of timber, the value of the timber, or other issues that arise with a sale of timber rights.

The district court's opinion refers to substantial and competent evidence in the record supporting the determination that the parties

did not intend that Robinson be granted the timber rights for the Sells' property. The witnesses' testimony, the facts and circumstances surrounding the transaction and the language of the deed as a whole support the finding that Robinson was not granted the timber rights to the Sells' property.

## V.

## THE DAMAGE AWARD FOR TIMBER TRESPASS IS PROPER BUT THE DAMAGE AWARD SHOULD NOT INCLUDE THE DIMINUTION OF $1000 PER ACRE.

Robinson disputes the district court's determination that the Sells' property was damaged by the logging activities in the amount of $10,000.00. Robinson argues that the district court's measure of damages compensates the Sells twice for the logging because the market value of the trees is included in the price of the land with timber.

### A. Standard of Review

▮▮▮▮ A district court's award of damages will be upheld on appeal where there is sufficient evidence supporting the award. *See Bumgarner,* 124 Idaho at 641, 862 P.2d at 333. The amount of damages need only be established to a reasonable degree of certainty.

*Id.* at 640, 862 P.2d at 332.

"Reasonable certainty" does not require mathematical exactitude, but only that the damages be taken out of the realm of speculation. The mere fact that it is difficult to arrive at exact amount of damages, where it is shown that damages resulted, does not mean that damages may not be awarded; it is for the trier-of-fact to fix the amount. In fixing that amount, it is for the trier of fact to determine the credibility of the witnesses, to resolve conflicts in the evidence, and to draw reasonable inferences therefrom. *Id.* (internal citations omitted).

### B. There is substantial and competent evidence in the record supporting the district court's award of timber trespass damages to the Sells.

▮▮▮ I.C. § 6–202 sets forth a cause of action for timber trespass. That section provides that:

Any person who, without permission of the owner, ... cuts down or carries off any wood or underwood, tree or timber, or girdles, or otherwise injures any tree or timber on the land of another person, ... without lawful authority, is liable to the owner of such land, or to such city or town, for treble the amount of damages which may be assessed therefore or fifty dollars ($50.00), plus a reasonable attorney's fee which shall be taxed as costs, in any civil action brought to enforce the terms of this act if the plaintiff prevails.

I.C. § 6–202 applies only where the trespass is shown to have been willful, wanton or intentional. *Earl v. Fordice,* 84 Idaho 542, 545, 374 P.2d 713, 714 (1962); *Bumgarner,* 124 Idaho at 639, 862 P.2d at 331. Robinson admitted to intentionally logging the Sells' property, relying on his argument that the deed granted him the right to the timber. Robinson logged the Sells' property when they were away for the winter, and upon their return, the Sells were surprised and upset that their property had been logged. The district court's holding that the Sells' established a claim for timber trespass is proper.

▮▮▮ In fixing the amount of damages for timber trespass, the plaintiffs must establish: 1) the actual amount of timber claimed to have been taken and 2) the market value of the timber in the area at the time of the taking. *Mercer v. Shearer,* 84 Idaho 536, 540–41, 374 P.2d 716, 719 (1962). The Sells presented evidence that the merchantable timber taken from both Robinson's and their property had a gross volume of 85,790 board feet, with a total value of $34,595.50. The logger, Day, testified that at least thirty percent of the timber was from the Sells' property. The district court judged Day to be a credible witness and determined that the value of the trees taken from the Sells' property was $10,378.65. Because the Sells established that Robinson's logging was willful and intentional, the district court trebled this amount and awarded the Sells $31,135.95 for their timber trespass claim. Because substantial and competent evidence in the record supports this award, it should be upheld.

With respect to the Sells' property damage claim, the district court awarded them an additional $1,000 per acre, or $10,000, to compensate them for the diminution in the value of their property. In making this award, the district court relied upon the photographic evidence and Milliron's testimony as to the value of property without trees compared to the value of property with trees. Milliron testified that he purchased real property without growing timber for $1,500.00 per acre, while Robinson purchased the Sells' property with timber for $2,500.00 per acre. However, Robinson argues that awarding the Sells damages for diminution in value to their property resulting from the logging activities compensates them twice for Robinson's actions. While I.C. § 6–202 does not preclude an action for diminution in property value brought in conjunction with a timber trespass claim if there is identifiable loss separate from the removal of the timber, the diminution in value in this case is directly related to the value of the timber removed for which the Sells are being compensated. Under the evidence in this case, the $10,000 award for diminution in value would constitute a double recovery.

## VI.

### NO ATTORNEY FEES ON APPEAL ARE ALLOWED

The Sells argue that they are entitled to attorney fees and costs on appeal pursuant to I.A.R. 41 and the REPSA. Their claim was not based on the REPSA. It was based on the deed which has no attorney fee provision. They do not cite to or argue any statute on appeal allowing an award of attorney fees. Attorney fees on appeal are denied.

## VII.

### CONCLUSION

The district court's decision is affirmed in part and reversed in part. The award for timber trespass is affirmed. The award for the diminution in property value is reversed. The award of attorney fees in the district court is affirmed. The Sells are awarded costs but no attorney fees on appeal.

Justices TROUT, EISMANN, BURDICK and JONES concur.